Ellen F. DEAN, Appellant,

v.

Betty Lou FIROR, Appellee.

No. 6704.

Supreme Court of Alaska.

April 20, 1984.

William T. Ford, Anchorage, for appellant.

Max F. Gruenberg, Jr., Anchorage, for appellee.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.*

## OPINION

DIMOND, Senior Justice.

The issue in this case is whether Appellant Ellen Dean waived her right to a peremptory challenge of the master assigned to her case. We conclude that she did not waive her peremptory right and set aside the judgment adopting the master's findings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Walter Firor and Betty Lou Firor were divorced on December 14, 1976. Their property settlement agreement provided in part that Walter was to retain ownership of Firor Construction Company, a close corporation. At the time of the divorce, the company was having financial and legal difficulties and, aside from some equipment, possessed only one valuable asset: 10.67 acres of undeveloped land in downtown Palmer that the company had purchased from Leo Lucas in 1973 (the "Lucas property"). Walter also retained a one-third interest in recreational property consisting of a cabin and acreage in Seldovia, which he had purchased in 1974 with two others (the "Merrill property"). The property settlement agreement also required Walter to pay $750 per month in alimony to Betty for four years or until she died or remarried.

In July of 1976, Ellen Dean, the company bookkeeper, acquired a two-thirds interest in the Merrill property from Walter's two partners. A year later she acquired the remaining one-third interest in the Merrill property from Walter in satisfaction of

debts for loans made to Firor Construction Company.

In November 1976, W.R. Grasle Company ("Grasle") obtained a final judgment against Firor Construction Company for over $26,000. Betty subsequently moved for an order restraining Grasle from executing on the Lucas property to satisfy its judgment. The motion was denied, and the Lucas property was sold to Grasle at an execution sale. Walter was unable to redeem the property within the period of redemption. In June 1978, Ellen Dean, no longer affiliated with the company, but cohabiting with Walter, gave $24,683.18 to Grasle in exchange for a quitclaim deed to the Lucas property.

After June 1978, Walter ceased making alimony payments to Betty. At that time, Walter was unemployed, had no significant assets, and was being supported by Ellen Dean.

In March of 1979, and again in February of 1980, Betty obtained judgments against Walter for alimony arrearages. On May 6, 1980, Walter appeared in a judgment debtor examination before Standing Master Andrew Brown. Upon Master Brown's recommendation, Judge Carlson issued a temporary restraining order ex parte against Ellen Dean prohibiting her from transferring or encumbering the Lucas or Merrill properties. Betty subsequently moved for a preliminary injunction. Master Brown conducted a hearing on May 19 and May 21, 1980, at which Ellen Dean was present and represented by counsel.

On July 3, 1980, Betty filed a complaint against Walter, Ellen Dean, and Firor Construction Company, citing the judgments in her favor for alimony arrearages and alleging that the conveyances of the Merrill and Lucas properties were fraudulent and therefore void pursuant to AS 34.40.010.[1]

---

* Dimond, Senior Justice, sitting by assignment made pursuant to Art. IV, § 11, of the Constitution of Alaska.

1. AS 34.40.010 reads:

A conveyance or assignment, in writing or otherwise, of an estate or interest in lands, or in goods, or things in action, or of rents or

profits issuing from them or a charge upon lands, goods, or things in action, or upon the rents or profits from them, made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, or a bond or other evidence of debt given, action commenced, decree or judgment suffered,

At the same time, Betty moved for an order to consolidate this action with the injunctive proceedings. Judge Singleton granted the consolidation motion in July of 1980. In September 1980, Ellen Dean filed a peremptory challenge against Master Brown and requested that another judge or master be assigned to hear the consolidated cases. Judge Carlson assigned himself to the consolidated cases and appointed Master Brown to conduct further hearings.

After three days of hearings in July 1981, Master Brown issued a report which found that Walter and Ellen Dean had defrauded Betty, and concluded that the conveyances by which Ellen Dean had acquired the Merrill and Lucas properties should be set aside and declared void. Judge Carlson approved the master's findings and conclusions. In January 1982, final judgment was entered, which declared Walter to be the real owner of both parcels and awarded Betty alimony arrearages plus costs and full attorney's fees. Ellen Dean appeals this judgment.

## II. DISQUALIFICATION OF MASTER BROWN

AS 22.20.022 provides a litigant with the right to one peremptory challenge of a judge assigned to the case. Alaska Civil Rule 42 governs the procedural requisites for peremptorily challenging a judge or master. *Tunley v. Municipality of Anchorage School District*, 631 P.2d 67, 71 (Alaska 1981). Civil Rule 42(c)(4)(i) provides that this right is waived when a party knowingly participates in "[a]ny judicial proceeding which concerns the merits of the action and involves the consideration of evidence or of affidavits." The superior court refused to remove Master Brown on the grounds that Ellen Dean had waived her right to a peremptory challenge by appearing at the preliminary injunction hearing. Ellen Dean contends that her appearance at that hearing was not a knowing waiver under Rule 42(c)(4).

We discussed what constitutes a knowing waiver in *Tunley*, 631 P.2d at 73. In

that case, the appellant appeared before a judge and submitted affidavits at a hearing in opposition to a motion to consolidate. After the motion to consolidate was granted, the combined suit was reassigned to the judge who had presided at the hearing. The appellant promptly filed his peremptory challenge, which was denied under the waiver exception to Rule 42. We reversed, stating:

> This requirement of a knowing waiver requires that waiver can be found only where the requisite participation occurs *after* the party is informed that the judge before whom he or she is appearing is the judge permanently assigned to hear the case or is assigned for trial. Any other interpretation would be inconsistent with the apparent reason for this scienter requirement and with the due process right to a fair and impartial trial judge which Alaska's peremptory challenge provisions are designed to liberally ensure.

631 P.2d at 73 (footnotes omitted) (emphasis added).

Betty Firor contends that *Tunley* is distinguishable because, unlike the hearing for a preliminary injunction in this case, the hearing for consolidation in *Tunley* did not involve a "proceeding which concerns the merits." Alaska R.Civ.P. 42(c)(4)(i). This contention is rebutted by *Kodiak Island Borough v. Large*, 622 P.2d 440 (Alaska 1981), in which we noted:

> The effect of this rule is to preclude a finding of waiver when a party participates before a judge in matters involving the merits of the case but does so prior to that judge's assignment to the case for purposes of trial. This is because it would be neither fair nor conducive to an effective exercise of the right to require a party to challenge a judge before whom he does not know whether he will appear.

*Id.* at 443.

■ In the present case, the hearing for a preliminary injunction was conducted be-

with the like intent, as against the persons so

hindered, delayed, or defrauded is void.

fore Master Brown on May 19 and 20, 1980. The complaint against Ellen Dean was not filed until July 3, 1980, over a month after her appearance at the hearing. The motion to consolidate was granted on July 23, 1980, and the case was not assigned to Judge Carlson and Master Brown until September 19, 1980. Therefore, Ellen was not informed that the same master who presided over the May 1980 hearing would preside over the consolidated hearings until four months after her initial appearance. Furthermore, when she participated in the May hearings, she was not even a party to the lawsuit. To require that she anticipate the filing of a lawsuit, its consolidation with the injunction proceeding, and an assignment of the consolidated cases to the same master who had presided over the earlier proceeding, would render meaningless the requirement of a knowing waiver under Civil Rule 42. We therefore hold that Ellen Dean's appearance at the May 1980 hearing did not waive her right to a peremptory disqualification. On September 2, 1980, Ellen Dean filed a Notice of Change of Master. This notice was proper and timely, and therefore the superior court erred when it denied her peremptory challenge.

The effect of a peremptory disqualification of a master is that the master loses the capacity to proceed further. As we explained in *Channel Flying, Inc. v. Bernhardt*, 451 P.2d 570 (Alaska 1969), with respect to the disqualification of a judge:

> [W]hen a timely and proper affidavit is filed the judge concerned is at once disqualified from acting as a judge in the particular action or proceeding. When he is disqualified he no longer possesses the qualities necessary to act as a judge, i.e., the qualities of power, capacity, fitness or competency to proceed further. In short, when a proper affidavit has been timely filed, the judge involved is without power or jurisdiction to take any further action in the proceeding. If this were not the intent and effect of [AS 22.20.022], then it would be meaningless and ineffective.

*Id.* at 574 (footnote omitted). Once Ellen Dean's affidavit of disqualification was filed, Master Brown was without authority to proceed further and to issue the findings and conclusions contained in his report. The final judgment, which was based on this report, must accordingly be set aside.

## III. ISSUES UPON REMAND

### A. Qualifications of Master Brown under Alaska Civil Rule 53

To assist the trial court upon remand, we now decide whether Master Brown was qualified under Alaska Civil Rule 53(a) to hear the fraudulent conveyance action.[2] First, we address Betty Firor's contention that Ellen Dean has waived the right to question on appeal the propriety of the reference of the consolidated cases to Master Brown.

While the record contains oral objections before the master as to the propriety of the reference, at no time from September 19, 1980, until the proceedings of July 15, 1981, did Ellen Dean file a motion before the presiding judge objecting to the reference as a violation of Civil Rule 53. Thus, the plaintiff, Betty Firor, contended that Ellen Dean was without standing to challenge the propriety of Master Brown hearing the consolidated action. Firor argues that this

---

**2.** Alaska Civil Rule 53(a) states in part:

*Appointment and Compensation.* The presiding judge of the superior court for each judicial district with the approval of the chief justice of the supreme court may appoint one or more standing masters for such district, and the court in which any action is pending may appoint a special master therein. As used in these rules the word "master" includes a referee, an auditor and an examiner, and a magistrate or a deputy magistrate.

The order appointing Andrew Brown Standing Master for the Third Judicial District was signed on January 24, 1979, *nunc pro tunc* to July 15, 1978, and stated that he had the power "to hear, and report as required, all cases with reference to uncontested divorce hearings, judgment debtor and garnishee examination, exemption claims, change of name hearings, default hearings and certain other matters as may be delegated to him."

issue has been previously decided in Alaska, specifically in two pre-statehood cases, *Mitchell v. Snipes*, 245 F.2d 691 (9th Cir. 1957), and *Reynolds v. Lentz*, 243 F.2d 589 (9th Cir.1957). In *Reynolds*, the appellants asserted, after a judgment was entered against them in the District of Alaska court, that the judgment was void because the judge before whom the case was tried had no jurisdiction to sit as a trial judge in the Territory of Alaska.[3] Since this portion of the appellants' appeal was based on a challenge to the circuit judge's power to appoint a judge for the District of Alaska court under 28 U.S.C.A. § 292(b), we find the case not on point.

The other case relied on by Betty Firor, *Mitchell v. Snipes*, 245 F.2d 691 (9th Cir. 1957), was similarly decided. The appellant, Mitchell, was sued in the Justice's Court of the Territory of Alaska, and a judgment was entered against him. Mitchell then unsuccessfully appealed the judgment to the District Court for the Territory of Alaska. Finally, before the Ninth Circuit, Mitchell asserted for the first time that the district court judge, regularly a judge from the Southern District of Texas, lacked jurisdiction to sit in Alaska. For the reasons cited in *Reynolds*, this portion of the appeal was dismissed.[4]

Accordingly, we find the issue of whether it is necessary for an appellant to have filed a written motion before a presiding judge in order to raise on appeal the qualifications of an appointed master to be a case of first impression in Alaska. For guidance, we look to the federal courts, where the topic of judicial references to magistrates has been the subject of frequent discussion by legal scholars and by courts. *See Smith v. Brown*, 3 F.2d 926, 927 (5th Cir.1925). *See generally* 5A J.

Moore, Federal Practice ¶ 53.05[3] (2d ed. 1982); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2606 (1971); Comment, *Masters and Magistrates in the Federal Courts*, 88 Harv.L.Rev. 779 (1974).

■ Under Equity Rule 59, the predecessor to Federal Civil Rule 53, it was clear that a party who had not objected to a reference by the time of the proceeding before the master waived any potential objection to the reference. *See generally Coyner v. United States*, 103 F.2d 629, 635 (7th Cir.1929); *Smith v. Brown*, 3 F.2d 926, 927 (5th Cir.1925); 5A J. Moore, *supra;* 9 C. Wright & A. Miller, *supra.* Despite some changes to the form of Federal Civil Rule 53,[5] that precedent endures today. "Ordinarily a party who objects to a reference to a magistrate must make his objections known either at the time of the reference or soon thereafter." *Hill v. Duriron Co.*, 656 F.2d 1208, 1213 (6th Cir.1981); *Calderon v. Waco Lighthouse for the Blind*, 630 F.2d 352, 354 (5th Cir.1980); *Cruz v. Hauck*, 515 F.2d 322, 326, 330 (5th Cir.1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976). The principle behind these holdings is simply that, once a party has participated in a hearing before a master, in the absence of objection, a court has the right to assume that the reference is agreeable to the parties. Otherwise, losing parties would be encouraged to challenge the propriety of the reference, and thus, gain a "second bite of the apple." *See, e.g., Cruz v. Hauck*, 515 F.2d at 331 (5th Cir.1975). We find the policy behind these cases persuasive and hold that, in future cases, a party objecting to the propriety of the reference should do so prior to or at the time of the reference. If this is unfeasible, the objection should be

---

**3.** The case was tried before the Honorable Edward P. Murphy, a District Judge of the Northern District of California, who had been assigned and designated to sit and hold court in the District of Alaska by the Chief Judge of the Ninth Circuit pursuant to the provisions of 28 U.S.C.A. § 292(b).

**4.** The *Mitchell* court, *citing Reynolds v. Lentz*, stated: "[A]n appellant, who on appeal, questions for the first time the designation of a

District Judge from the United States, or his right to sit as a judge in the Alaska District Courts, has no standing to raise the issue in this Court." 245 F.2d at 692.

**5.** See *Cruz v. Hauck*, 515 F.2d 322, 329, *cert. denied*, 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976), for a brief summary of the evolution of Federal Civil Rule 53.

made to the *judge* at the earliest possible opportunity. *See id.;* 5A J. Moore, Federal Practice ¶ 53.05[3] (2d ed. 1982).

■ Despite this conclusion, we feel an application of this rule to the present case would be unjust for two reasons. First, the record shows that a pre-trial conference was held in Master Brown's chambers on May 15, 1981. At that time, the parties were ordered to have all motions filed. We note that this pre-trial order was not signed by Judge Carlson until June 18, 1981, and was never served on Ellen Dean.[6] We find that the Ellen Dean's failure to receive the pre-trial order mandating the filing of all motions by July 1, 1981, prevented her from receiving notice of the amount of time with which to make an objection before the presiding judge. Secondly, the confusion of both parties, which was reflected in the record, indicated the absence of a clear rule specifying the correct procedure for an attorney to follow when objecting to a reference under Rule 53. We see no reason why one party should suffer. Accordingly, we find that Ellen Dean did not waive her right on appeal to challenge the propriety of the reference. We now turn to the merits of her claim.

In deciding the issue, we first note that the language in Federal Civil Rule 53(b),[7] which severely limits the use of references, was purposefully omitted from Alaska Civil Rule 53. We believe Ellen Dean's reliance upon *Bradshaw v. Thompson,* 454 F.2d 75 (6th Cir.1972), is misplaced, as the holding in *Bradshaw* rests entirely on an interpretation of Federal Civil Rule 53(b), which Alaska has not adopted. In light of this, Betty Firor urges us to conclude that it was the intention of the drafters of Alaska Civil Rule 53 to allow the trial judges to appoint masters in a case such as this. We decline to adopt that viewpoint.

By the mere absence of subsection (b), there is an indication that the drafters of Alaska Civil Rule 53 intended to allow the trial judges a more liberal use of masters than that allowed under the federal system. In considering whether or not the reference was an abuse of the trial court's discretion,[8] the fact that Alaska has not adopted subsection (b) of the federal rule makes application of the extensive federal case law on this subject inappropriate. We thus look to other states for guidance.

Decisions by other appellate courts and the rules from other states reflect a variety of approaches to the use of references. Some states have adopted versions identical[9] or nearly identical[10] to Federal Civil Rule 53. Others have created their own rules unrelated to the federal version.[11]

**6.** Because of the existing companion contempt action against Walter Firor, the pre-trial order was instead sent to the local Public Defender's Office.

**7.** Federal Civil Rule 53(b) states:
(b) Reference. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.

**8.** Alaska Civil Rule 53(a) authorizes a superior court judge before whom any action is pending to appoint a master. Due to the similarity between Alaska Civil Rule 53(a) and Federal Civil Rule 53(a), we believe our review should be limited to whether the superior court judge "erred in ruling on matters within [his] jurisdiction." *See, e.g., Cruz v. Hauck,* 515 F.2d 322, 327 n. 7 (5th Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976); *LaBuy v. Howes Leather Co.,* 352 U.S. 249, 261, 77 S.Ct. 309, 316, 1 L.Ed.2d 290, 300 (1957) (Brennan, J., dissenting); *Rogers v. Societe Internationale, Pour Participations Industrielles et Commerciales,* 278 F.2d 268, 270–71 (D.C.Cir.1960), *cert. denied,* 364 U.S. 895, 81 S.Ct. 223, 5 L.Ed.2d 189 (1960).

**9.** *See* Colo.R.Civ.P. 53 (1973).

**10.** *See* Idaho R.Civ.P. 53 (1980); Me.R.Civ.P. 53 (1983).

**11.** *See* Conn.Gen.Stat.Ann. § 52–434 (West Supp.1983); Fla.Stat.Ann. § 69.051 (West Supp. 1983); Iowa R.Civ.P. 207 (West 1983); La.Rev. Stat.Ann. § 13–713 (West 1983); Neb.Rev.Stat. § 25–1129 to –1137 (1979); N.Y.Civ.Prac.Law § 4317 (Consol.1978); N.C.Gen.Stat. § 1A–1, R.Civ.P. 53 (Supp.1981); Ohio R.Civ.P. 53 (1982); S.C.Code Ann. § 15–31–10 to –140 (Law. Co-op.1977); Tex.R.Civ.P. 171 (West 1983); Wash.Rev.Code Ann. § 4.48.010—.100.

■ While some jurisdictions may give trial judges a great deal of liberty in referring cases, we find a more restrictive view to be more appropriate. We think that the responsibility for deciding questions of law lies with the judiciary. When such an issue as a fraudulent conveyance arises, it is appropriate that the trial judge himself preside. A trial court should not assume the role of a quasi-appellate court by simply reviewing the findings of the master. In light of this, we find it was error for the trial court to allow the master to decide that a fraudulent conveyance took place.

In *Little v. Little*, 325 So.2d 424 (Fla. Dist.Ct.App.1976), the appellant in a dissolution proceeding appealed an order of referral to a general master pertaining to alimony, child support, and a determination of property rights. The court of appeals upheld the contention that the reference was improper with respect to the matter of the property rights. As that court noted, "Where the question of property rights is raised, a [trial judge] must determine the issue since the final dissolution of marriage judgment settles all of the property rights of the parties and bars any future action to determine such rights." *Id.* at 425.

We feel *Little* is particularly applicable to the case at bar. While the original order appointing Brown as master provided that he could hear "[c]ertain other matters as may be delegated to him," the nature of the order entailed mostly matters which were either uncontested or were less likely to entail the resolution of complicated questions of law, where the invaluable judgment and discretion of a trial judge would be required.[12] The case at bar involves not only a marriage dissolution, but the property rights of a third party. Were we to allow the master to hear and decide the case which involved asserted fraudulent conveyances, Ellen Dean would stand to have a number of property transactions nullified. Foreseeably, Ellen Dean would have no resort but the costly process of appeal without ever having a trial before a judge. We find that she deserved to have the issue of the fraudulent conveyances heard and resolved by a trial judge of the superior court.

We find this conclusion is further supported by the views of the South Carolina Supreme Court in *Fuller v. Hemby*, 274 S.C. 459, 265 S.E.2d 36 (1980). In *Fuller*, the high court found that, as a matter of discretion, the trial court had exceeded its statutorily derived power[13] by referring to a master a case in which the plaintiff requested a reformation of a property deed.

In light of these decisions, and in order to promote the proper determination and interpretation of the laws of this state, we find it was error for the trial court to appoint the master to preside over the evidentiary hearing on July 15, 1981.

**B. Consolidation**

■ We find no error on the part of the trial judge in consolidating the dissolution and fraudulent conveyance action.

---

12. *See supra* note 2, at 325.

13. Section 15–31–20 of the South Carolina statute states:
    *Reference may be compulsorily ordered.*
    When the parties do not consent the court may, upon application of either or its own motion, direct a reference in the following cases:
    (1) In all equitable actions and of equitable issues in actions at law;
    (2) When the taking of an account shall be necessary for the information of the court, before judgment, or for carrying a judgment or order into effect; or
    (3) When a question of· fact, other than upon the pleadings, shall arise, upon motion or otherwise, in any stage of the action.

S.C.Code Ann. § 15–31–20 (Law.Co-op.1977).
    We note that this decision rests on a narrow statutory interpretation of the applicable South Carolina statute in that the *Fuller* court found that the relief requested was not of an equitable nature, but rather of a legal one thus making the reference improper. While the South Carolina statute in that case is dissimilar to our version, we are satisfied that the principle behind the decision in *Fuller* was to prevent masters from deciding questions of law such as the determination of disputed property rights. This conclusion is buttressed by *Etheredge v. Porter*, 134 S.C. 71, 131 S.E. 768 (1926), where it was held that a reference was not proper in an action to set aside deeds for fraud (where no examination of a long account was involved).

Under Alaska Civil Rule 42(a),[14] actions involving a common question of law or fact may be consolidated; this is a matter which is within the trial court's discretion. *See Miller v. Sears*, 636 P.2d 1183, 1192 (Alaska 1981); *Brown v. Hawkins*, 418 P.2d 28, 30–31 (Alaska 1966). We are of the view that consolidation of the two actions wisely precluded the possibility of two separate trials to determine the status of the subject properties. This prevented rising costs and delay for both of the parties and unnecessary use of the court's time. We find Ellen Dean's claim of prejudice [15] unconvincing, and consequently, that the court did not abuse its discretion in consolidating the proceedings.

The judgment of the superior court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

BURKE, C.J., dissents in part.

MOORE, J., not participating.

BURKE, Chief Justice, dissenting in part.

I disagree with that part of the court's opinion holding that it was error to refer this matter to a master.

The absence of language comparable to that found in Federal Rule 53(b) suggests, as acknowledged by the majority, that the Alaska rule was intended to allow the use of masters in the broader category than is allowed in the federal system. The express language of Alaska's Rule 53 certainly does not prohibit the reference made in this case.

It may be possible to conclude that the use of a master here was an abuse of discretion, but I don't think that conclusion follows from the discussion contained in the court's opinion. While a master's report may include conclusions of law "if required," Civil Rule 53 makes it clear that such conclusions are not entitled to the same degree of deference as are a master's findings of fact. The latter must be accepted (in a non-jury case) "unless clearly erroneous," but the master's conclusions of law are in no way binding on the trial judge. Thus, the use of a master does not in and of itself mean that the trial judge will abdicate his or her responsibility for deciding questions of law, nor should that fact be presumed. If there is to be any presumption, it should run the other way.

The record in this case indicates that the trial judge, Judge Victor D. Carlson, read the master's report and the objections thereto, was familiar with the record, and that he accepted the report only after considering the arguments of counsel. Thus, although he reached the same conclusions as Master Brown, I see no reason to suppose that he simply rubber-stamped those conclusions. On the contrary, I think it can be fairly said that Judge Carlson reached his decision only after independent consideration of the issues presented. If, however, the court believes that he did otherwise, the opinion should say so in no uncertain terms; but I have been unable to find anything in the record supporting that conclusion other than the bare fact the case

---

**14.** Alaska Civil Rule 42(a) states:
   When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

·**15.** We assume that Ellen Dean refers to Alaska Civil Rule 42(b) which states in full:
   *Separate Trials.* The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right ·of trial by jury as declared by the Alaska Constitution and Statutes of Alaska.

   Ellen Dean maintains that determination of her property rights by a divorce master would prevent her from presenting her case to a judge or jury. Since this court has found that on remand it will be more appropriate for a judge to hear the consolidated issue, we need not address that point.

was referred to a master. To me, that alone is not a sufficient reason for saying that Judge Carlson acted improperly.

Also, the "rule" announced today provides little guidance for those that will be expected to follow it in future cases. The opinion seems to say that Civil Rule 53 is broader than the federal rule, but not broad enough to allow the use of masters in (1) "a case such as this;" (2) cases involving "such an issue as a fraudulent conveyance;" (3) a case "likely to entail the resolution of complicated questions of law;" (4) cases involving "questions of law such as the determination of disputed property rights;" and/or (5) those cases in which the master acts as the presiding officer in an "evidentiary hearing," such as in the case at bar. If we intend to limit the use of masters, I think we are required to do so by means of a rule having considerably more certainty than this. The language of the court's opinion can only generate confusion.

Finally, the use of masters is a subject best considered under our rule making power. Given the considerable impact that any change in the present practice may have on the operation of our trial courts, I think it is a matter that should be approached with extreme caution, and only after consultation with representatives of the bar and the trial courts. In my judgment, it is poor policy to implement such a rule change by the method used here unless it is constitutionally required.

I concur in all other parts of the court's opinion.